STATE of Wisconsin, Plaintiff-Appellant,

v.

Victor M. BOHACHEFF, Defendant-Respondent.

Supreme Court

*No. 83–130–CR. Argued September 7, 1983.— Decided October 4, 1983.*

(Also reported in 338 N.W.2d 466.)

For the plaintiff-appellant the cause was argued by *Chris Heikenen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the defendant-respondent there was a brief by *Thomas R. Fahl* and *Brendel, Flanagan, Sendik & Fahl, S.C., Milwaukee,* and oral argument by *Thomas R. Fahl.*

Amicus Curiae brief was filed by *Kent A. Tess-Mattner,* Milwaukee, for Wisconsin Civil Liberties Union Foundation, Inc.

SHIRLEY S. ABRAHAMSON, J. This appeal, on bypass from the court of appeals, is from an order of the circuit court for Waukesha county, Ness Flores, Circuit Judge, dismissing with prejudice the second count of a two-count criminal complaint commencing criminal prosecution against the defendant. The complaint charged the defendant with two counts of causing great bodily harm to another human being by operating a vehicle. The first count tracks sec. 940.25(1)(a), Stats. 1981–82, charging the defendant with being under the influence of an intoxicant while operating a ,vehicle. The second count tracks sec. 940.25(1)(b), charging the defendant with having a blood alcohol concentration of .10 percent or more while operating a vehicle.[1]

The defendant filed a motion in the circuit court to dismiss the complaint on the ground that charging the defendant under both subsections (a )and (b) of sec. 940.25 (1), Stats. 1981–82, violates the state[2] and federal[3] con-

---

[1] The statute also prohibits operating with a concentration of 0.1 grams or more of alcohol in 210 liters of a person's breath.

[2] Art. I, sec. 8(1), of the Wisconsin Constitution provides that "no person for the same offense may be put twice in jeopardy of punishment."

[3] The Fifth Amendment to the United States Constitution provides in part that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." This ban on double jeopardy is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 US 784 (1968).

stitutional protections against double jeopardy. The circuit court ruled that charging both counts violates the double jeopardy provisions of the constitutions and dismissed the second count of the complaint with prejudice. We conclude that the complaint does not violate double jeopardy protections because the statute subjects the defendant to only one conviction and one punishment. We reverse the order of the circuit court and remand the matter to circuit court for proceedings not inconsistent with this opinion.

The only facts we have are those set forth in the complaint since the proceeding has not progressed beyond the complaint stage. It is evident that the two counts in the complaint stem from a single incident. As the defendant was driving down the highway in the early morning hours of June 6, 1982, his vehicle allegedly struck and injured a police officer who was assisting at the scene of an accident. According to the complaint, the investigating deputy noted that the defendant had extremely bloodshot eyes and exuded a strong odor of intoxicants; when asked to perform field sobriety tests, the defendant was unable to recite the alphabet or perform a balance test; believing that the defendant was under the influence of an intoxicant, the deputy transported the defendant to a hospital to obtain a blood sample for testing; the blood test results showed blood alcohol concentration of 0.220 percent.

The defendant was charged under sec. 940.25(1), Stats. 1981–82, which provides that it is a Class E felony to cause great bodily harm to another human being by the operation of a vehicle, while under the influence of an intoxicant, sec. 940.25(1)(a), or while having a blood alcohol concentration of 0.10 percent or more, sec. 940.25 (1)(b).

Sec. 940.25(1)(c) authorizes the prosecutor to charge a violation of either sec. 940.25(1)(a) or sec. 940.25(1)

(b) or both. The legislature provided, however, that if both violations are charged, there shall be a single conviction for purposes of sentencing and for purposes of counting convictions under certain provisions in ch. 343 for revocation or suspension of a person's operating privileges.[4]

Sec. 940.25(1), Stats. 1981–82, reads as follows:

"(1) Any person who does either of the following under par. (a) or (b) is guilty of a Class E felony:

"(a) Causes great bodily harm to another human being by the operation of a vehicle while under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance.

"(b) Causes great bodily harm to another human being by the operation of a vehicle while the person has a blood alcohol concentration of 0.1% or more by weight of alcohol in that person's blood or 0.1 grams or more of alcohol in 210 liters of that person's breath.

"(c) A person may be charged with and a prosecutor may proceed upon an information based upon a violation of par. (a) or (b) or both for acts arising out of the same incident or occurrence. If the person is charged with violating both pars. (a) and (b) in the information, the crimes shall be joined under s. 971.12. If the person is found guilty of both pars. (a) and (b) for acts arising out of the same incident or occurrence, there shall be a single conviction for purposes of sentencing and for purposes of counting convictions under ss. 343.30(1q) and 343.305. Paragraphs (a) and (b) each require proof of a fact for conviction which the other does not require."

Although the federal constitutional guarantee against double jeopardy has "its roots in antiquity," it is "one of the least understood . . . provisions of the Bill of Rights" and the holdings of the United States Supreme Court can "hardly be characterized as models of consistency and clarity." *Whalen v. United States,* 445 U.S.

---

[4] For similar provisions see secs. 346.63(1), 346.63(2), and 940.09, Stats. 1981–82.

684, 699–700 (1980) (Rehnquist, J. dissenting). See also Westen and Drubel, *Toward a General Theory of Double Jeopardy*, 1978 The Supreme Court Review 81, 82.

The United States Supreme Court has identified three interests protected by the double jeopardy clause: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (notes omitted). *See also Brown v. Ohio*, 432 U.S. 161, 165 (1977); *State v. Rabe*, 96 Wis. 2d 48, 64, 291 N.W.2d 809 (1980); *State v. Gordon*, 111 Wis. 2d 133, 141, 330 N.W.2d 564 (1983).

The only double jeopardy issue the state and defendant raise in this appeal is whether the statute violates the defendant's right to be free from "multiple punishments for the same offense."[5] This case involves the first and only prosecution; the defendant has not been previously prosecuted, convicted, or acquitted of the charges stemming from this incident.

Both the state and the defendant in this appeal focus on the issue of whether a trial in which the defendant is found guilty of violations of both sec. 940.25(1)(a)

---

[5] Although the statute can be read otherwise, the state appears to interpret the statute as requiring both charges to be prosecuted in a single proceeding if they are based on the same incident. We need not reach this issue since in this case both charges which are based on the same incident are being prosecuted in the same proceeding. The term "same offense" apparently may not have the same meaning when considering a second prosecution after a conviction or acquittal and when considering multiple punishments in a single proceeding. *Whalen v. United States*, 445 U.S. 684, 700 (1980) (Rehnquist, J., dissenting); *Brown v. Ohio*, 432 U.S. 161, 166, n. 6 (1977).

and sec. 940.25(1)(b) terminates with one conviction or two. The state asserts on appeal that charging violations of both statutory provisions and finding the defendant guilty on both counts in one trial does not violate the double jeopardy ban, because sec. 940.25(1)(c) provides for a single conviction and hence one punishment. In the alternative, the state argues that even if two convictions were permissible under sec. 940.25 in this case, the federal or state constitution would not be violated because paragraphs (1)(a) and (1)(b) do not set forth the same offense.

The defendant asserts that charging him with two counts in the circumstances of this case is unconstitutional because the statute subjects him to two convictions, one for each count, thereby imposing multiple punishments for a single offense.[6] The defendant recognizes that the "multiple punishments" of which he complains are not what we usually think of as punishments. The defendant acknowledges that sec. 940.25(1)(c) authorizes only one sentence even if there were two convictions in this proceeding and that two convictions would not adversely affect him in the application of the felony repeater statute, sec. 939.62, Stats. 1981–82. The "multiple punishments" that the defendant complains of are

---

[6] The defendant's position of multiple punishments rests on his assertion that (1)(a) and (1)(b) constitute one offense. The state's alternate position to its contention that sec. 940.25 does not provide multiple punishments is, as we have pointed out above, that sec. 940.25 provides for two separate offenses and therefore even if it provides multiple punishments it does not violate the federal guarantees against double jeopardy.

Since the court determines that the legislature did not authorize two convictions (and consequently no multiple punishments), there is, of course, no need for the court to resolve the second question posited by the parties, namely, whether the two statutory provisions set forth the same offense. See the discussion of the *Blockburger* test at pp. 410–412 and note 8.

the adverse collateral legal consequences that arise from having two convictions rather than one.

Several adverse collateral legal consequences come to mind. Each conviction imposes a stigma and causes damage to the person's reputation, *Sibron v. New York,* 392 U.S. 40, 56 (1968); *O'Clair v. United States,* 470 F.2d 1199, 1203 (1st Cir. 1972), cert. denied 412 U.S. 921 (1973). The number of prior convictions may be considered in some future sentencing proceeding, should the defendant again be convicted of a crime, or may be used to impeach him if the defendant testifies as a witness in some future trial. Sec. 906.09, Stats. 1981–82. Although similar concerns about multiple convictions for the same offense were expressed by Justices Marshall and Stevens in their dissent in *Missouri v. Hunter,* —— U.S. ——, ——, 103 S. Ct. 673, 681–82 (1983), the defendant cites no authority that such adverse collateral consequences constitute punishment within the meaning of the double jeopardy clause. We need not decide what constitutes "punishment" because, as we explain below, we interpret the statute as providing for only one conviction in this case. Consequently the defendant's fears of multiple punishments are laid to rest.

For federal constitutional purposes, the dispositive issue in determining whether a court may impose multiple punishments on a defendant in a single trial for violating two statutory provisions (regardless of whether they constitute the same offense) is whether the legislature authorized multiple punishments. *Missouri v. Hunter,* —— U.S. ——, ——, 103 S. Ct. 673, 679 (1983).[7] More

---

[7] In recent cases the United States Supreme Court has held that as long as the legislative intent is clear the federal Constitution does not bar the legislature from imposing multiple punishments even if the crimes described by the two statutory provisions under which two punishments are imposed are the same offense. *Mis-*

specifically the dispositive issue on appeal is whether under the facts set forth in this complaint, that is, one incident, one victim, the legislature authorized one conviction and one punishment for violations of both paragraphs (1)(a) and (1)(b) of sec. 940.25 or two convictions and, according to the defendant, multiple punishments.

To determine whether or not the legislature intends multiple convictions under paragraphs (1)(a) and (1)(b) of sec. 940.25 in this case, we look to the language of the statute, the nature of the proscribed conduct, and the appropriateness of multiple punishments. We are also aided in our search for legislative intent by canons of statutory construction.

At first glance various provisions in sec. 940.25 seem to support the interpretation that the legislature intended to define two crimes even if there is one incident or occurrence and one victim and to provide for a conviction for each as a Class E felony. First, sec. 940.25(1) sets forth "under the influence" and the blood alcohol concentration in two distinct, separate paragraphs and characterizes each as a Class E felony. Second, sec. 940.25(1)(c) expressly authorizes the prosecutor to proceed upon a complaint incorporating both bases of liability for acts arising out of the same incident or occurrence. Third, sec. 940.25(1)(c) refers to violations of paragraphs (a) and (b) in the plural—as *crimes*—to be joined under sec. 971.12, Stats. 1981–82, which allows two crimes based on the same act or transaction to be charged in the same complaint "in a separate count for each crime." Fourth, sec. 940.25(1)(c) provides that the jury return separate verdicts for each count.

Finally, sec. 940.25(1)(c) states that "paragraphs (a) and (b) each require proof of a fact for conviction which

souri v. Hunter, supra, —— U.S. ——, 103 S. Ct. 673 (1983); *State v. Gordon,* 111 Wis. 2d 133, 137, 330 N.W.2d 564 (1983).

the other does not require." This language is obviously taken from *Blockburger v. United States,* 284 U.S. 299 (1932), which sets forth the "additional fact" or "additional element" test used to determine whether two statutory provisions constitute the same offense for imposition of multiple punishments.[8] The legislature is apparently trying to say that paragraphs (1) (a) and (1) (b) satisfy the *Blockburger* test and therefore do not constitute the same offense.[9] When the legislature cre-

---

[8] The *Blockburger* case set forth the following test:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304 (1932).

[9] Saying it's so doesn't make it so. Whether a statute sets forth one offense or separate offenses under the *Blockburger* test is often a difficult and subtle question.

The state asserts that each paragraph does require proof of a fact for conviction which the other does not require. Paragraph (a) requires, according to the state, proof that the defendant was "under the influence" while operating a vehicle, that is, that the defendant's ability to operate a vehicle was materially impaired because of his ingestion of an intoxicant. Even if the defendant's blood alcohol concentration is less than .10 percent, his ability to operate a vehicle may be materially impaired because he was drinking. The state argues that sec. 940.25(1)(b) does not require proof of operating "under the influence." Sec. 940.25(1)(b) requires proof of defendant's operating with a blood alcohol concentration of .10 percent or more, regardless of defendant's ability to operate the vehicle. On the basis of the state's arguments, it appears that paragraph (a) and paragraph (b) each require proof of a fact for conviction which the other does not require and that the legislature created two offenses.

The defendant points out that the distinctiveness of the elements of the two statutory provisions tends to become blurred when sec. 940.25 is read with related statutes. The defendant argues that when all the relevant statutes are read together it is clear that the same evidence proves both charges and that the two statutory

ates separate, distinct offenses it usually provides for multiple convictions.

Although these provisions of sec. 940.25 might be read to indicate that the legislature intended two convictions even if there is only one incident or occurrence, other indicia of legislative intent make it evident that it authorized only one conviction for all purposes under the facts set forth in this complaint.

provisions meld into each other and become indistinguishable. The defendant observes that in this case, and in every other case where the test result is .10 percent or more and there is physical evidence of intoxication, evidence of the test result and the defendant's physical appearance, speech, memory, coordination will be introduced on both the issue of blood alcohol concentration and "under the influence."

The relevant statutes to which the defendant refers are as follows: The admissibility of chemical tests "does not limit the introduction of any other competent evidence bearing on the question of whether or not a person was under the influence of an intoxicant or had a blood alcohol concentration of 0.1% or more," sec. 885.235(4), Stats. 1981–82. Test results are admissible, not only as proof for the blood alcohol concentration charge but also on the issue of whether the person was "under the influence," sec. 343.305(7). Finally, a test result showing that there was .10 percent or more blood alcohol concentration is "prima facie evidence" that the driver "was under the influence" and that the driver "had a blood alcohol concentration of 0.1% or more," sec. 885.235(1)(c).

The defendant contends that in order for the legislature to make the test result prima facie evidence of "under the influence" there must be a logical connection between the proven fact (.10 percent blood alcohol concentration) and the inferred fact (being under the influence). The defendant also asserts the legislature has proscribed .10 percent blood alcohol concentration because it believes that such a test result means that the person is under the influence. On the basis of these observations the defendant concludes, as the circuit court concluded, that the two offenses are the same. As the circuit court said, "Semantics aside, having a blood alcohol concentration of .1 percent or more is synonymous with being under the influence."

Sec. 940.25(1)(c) explicitly addresses the issue of multiple convictions and multiple punishments and provides that "if the person is found guilty of both pars. (a) and (b) for acts arising out of the same incident or occurrence, there shall be a single conviction for purposes of sentencing and for purposes of counting convictions under ss. 343.30(1q) and 343.305."

The state and defendant interpret this language in sec. 940.25(1)(c) differently. The state interprets sec. 940.25(1)(c) as, in effect, allowing in this case only a single conviction for all purposes. The state concludes that the legislature intended only one conviction and one punishment for acts arising out of the same incident or occurrence.

The defendant and amicus curiae interpret sec. 940.25 (1)(c) as providing for a single conviction for limited purposes only, namely, for a sentencing in this proceeding and for counting convictions under the motor vehicle code. They argue that an accused found guilty of violating both paragraphs (1)(a) and (1)(b) will, despite the language of sec. 940.25(1)(c), have two convictions on his or her record.

■

We agree with the state's interpretation of sec. 940.25 (1)(c). It does not make sense to read the limiting language in sec. 940.25(1)(c) to mean that there would be one conviction for the most obvious and serious consequences of a conviction, such as sentencing, and two convictions for collateral consequences, such as impeaching a witness. We are persuaded that when sec. 940.25 is read with an understanding of the nature of the proscribed conduct, it is evident that the legislature intended a prosecution under the facts set forth in this complaint to terminate with one conviction for all purposes.

Sec. 940.25, enacted in 1981, represents a new approach to the serious problem of drinking and driving. It was apparently intended to make it easier for the state to convict a defendant for drinking and driving by broadening the bases for liability. Sec. 940.25 (1) (a) retains the traditional basis for the driver's liability, namely, that the driver ingested a quantity of intoxicants that rendered him "under the influence of an intoxicant". "Under the influence of an intoxicant" means that the person's ability to operate a vehicle is materially impaired because of his consumption of an alcoholic beverage. Sec. 939.22 (42), Stats. 1981–82.

Although for many years the statutes provided that the results of chemical tests were relevant evidence on the issue of being "under the influence," as of 1981 the state no longer needs to prove that the driver's ability to operate a vehicle was materially impaired because he had been drinking. The state may prove that at the time of operation of the vehicle the driver's blood alcohol concentration was .10 percent or more. Sec. 940.-25 (1) (b), Stats. 1981–82.[10]

The single evil that the legislature was trying to punish in the old and new statutes is the same: causing great bodily harm to another human being by operating a vehicle after having ingested a statutorily proscribed quan-

---

[10] A test result can never be conclusive on the issue of a defendant's blood alcohol concentration at the time of operating the vehicle since alcohol is probably being absorbed into the defendant's blood or is being metabolized at the time of the test. For a discussion of the "blood-alcohol curve," see *State v. Vick*, 104 Wis. 2d 678, 312 N.W.2d 489 (1981); Wis. Cr. J.I., Comment to No. 2660 (1982).

This basis of liability has been challenged in a case involving sec. 346.63, Stats. 1981–82, on constitutional grounds other than double jeopardy. *See, e.g.*, case no. 83–1598, *State v. Muehlenberg*, pending before the court of appeals. These issues are not before us.

tity of intoxicants.[11] Before 1981 the legislature provided only one test for determining the proscribed quantity of intoxicants: Was the defendant "under the influence?" In 1981 the legislature provided another test for determining the proscribed quantity of intoxicants: Was the defendant's blood alcohol concentration .10 percent or more? There may be situations where a person with

[11] The legislature set forth its intent as follows:

"1. Operation of motor vehicles by persons who are under the influence of an intoxicant or have a blood alcohol concentration of 0.1% or more seriously threatens the public safety and welfare.

"2. Persons who operate motor vehicles while under the influence of an intoxicant or having a blood alcohol concentration of 0.1% or more do so in disregard of the safety and welfare of both themselves and other members of the driving public and of the laws of this state.

"3. Penalties are an important and necessary element in deterring the operation of motor vehicles by those persons.

"4. A substantial number of persons who operate motor vehicles while intoxicated or having a blood alcohol concentration of 0.1% or more are in need of treatment or education or both to prevent further offenses related to the use of intoxicants.

"(b) The legislature intends by passage of this act:

"1. To provide maximum safety for all users of the highways of this state.

"2. To provide penalties sufficient to deter the operation of motor vehicles by persons who are intoxicated or have a blood alcohol concentration of 0.1% or more.

"3. To deny the privileges of operating motor vehicles to persons who have operated their motor vehicles while intoxicated or having a blood alcohol concentration of 0.1% or more.

"4. To encourage the vigorous prosecution of persons who operate motor vehicles while intoxicated or having a blood alcohol concentration of 0.1% or more.

"5. To promote driver improvement, through appropriate treatment or education or both, of persons who operate motor vehicles while intoxicated or having a blood alcohol concentration of 0.1% or more."

(Section 2051(13), Chapter 20, Laws of 1981, as amended by Chapter 184, Laws of 1981)

less than .10 percent blood alcohol concentration is "under the influence" and a person with .10 percent or more blood alcohol concentration is not. Nevertheless, the legislature has determined that a person who causes great bodily harm while operating a vehicle *either* "under the influence" *or* with a .10 percent or more blood alcohol concentration shall be subject to criminal penalty. We perceive no reason why the legislature would want to impose two convictions for the single evil—regardless of which bases of liability were proved.

It is apparent from the statute that in allowing the prosecutor to proceed upon a violation of both paragraphs (a) or (b) for acts arising out of the same incident and in providing for two verdicts, the legislature intended not to authorize two convictions but to ensure that the prosecutor would not be forced to elect the charge or the mode of proof before trial and risk a variance between the evidence and the charge. *See* Remington and Joseph, *Charging, Convicting and Sentencing the Multiple Offender,* 1961 Wis. L. Rev. 528, 545.

We are further convinced that the legislature intended to allow only a single conviction in the circumstances presented by this case when we consider the appropriateness of multiple punishments. Questions to consider in regard to appropriateness of multiple punishments include: whether there is a single act, transaction, incident, or course of conduct; whether the two grounds are significantly different so that they may be viewed as deserving separate punishment; and whether the two grounds invade a different interest of the victim or public which the statute intends to protect. These factors point to the conclusion that multiple punishments would not be appropriate in this case if the defendant were found guilty of violating paragraphs (1) (a) and (1) (b) of sec. 940. 25.

A final aid to interpreting sec. 940.25 is the canon of construction that if there is ambiguity, a penal statute should be interpreted in the defendant's favor. In construing federal statutes, the federal courts apply the rule of lenity. *Bell v. United States*, 349 U.S. 81, 83 (1955). Our court applies a similar concept, stating that "penal statutes are generally construed strictly to safeguard defendant's rights." *Austin v. State*, 86 Wis. 2d 213, 223, 271 N.W.2d 668 (1978). Using this canon of construction, we should interpret sec. 940.25, in the absence of express legislative indication to the contrary, to permit only one conviction under the circumstances of this case.

Although the intent of the legislature as to multiple convictions is not explicitly set forth in sec. 940.25, we conclude that it is readily discernible. A common sense reading of sec. 940.25 is that one conviction is intended where there is one incident or occurrence. The legislature was concerned with punishing a single wrong—causing great bodily harm to another by drinking and driving—and tried to make it easier to do so by providing the two bases for liability. Although the legislature apparently viewed the two bases for liability as sufficiently distinct in concept to allow the prosecutor to proceed with two counts and to require the jury to bring back two verdicts, we conclude that the legislature did not intend to require two convictions, even if there were two guilty verdicts, or to impose multiple punishments. This result is fair to offenders and society.

The defendant challenged the complaint as violating the constitutional ban on double jeopardy, because he interpreted the statute as allowing "two convictions" and as subjecting the defendant to collateral adverse legal consequences arising from a second conviction from the same offense. The defendant does not challenge the statutory scheme that provides for two charges and two

verdicts on any other grounds. Because we conclude that the legislature mandated only one conviction for all purposes and therefore one punishment, the defendant's motion to dismiss the complaint as violating his federal and state constitutional guarantees against being twice put in jeopardy fails. Accordingly, we reverse the order of the circuit court, reinstate the second count, and remand the cause to the circuit court for further proceedings not inconsistent with this opinion.

*By the Court.*—Order reversed; cause remanded for proceedings not inconsistent with this opinion.